UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ARIANA R. JORDAN,

    Plaintiff,

v.

JUSTIN D. KRAUSZ, JARED MISSEY,
ROBERT CARPENTER and THE VILLAGE
OF MARYVILLE,

    Defendants.

Case No. 17-cv-434-JPG-DGW

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Justin D. Krausz, Jared Missey, Robert Carpenter and the Village of Maryville ("Village") (Doc. 11). Plaintiff Ariana R. Jordan has responded to the motion (Doc. 12).

**I.**    **Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## II.    Facts Alleged

As a preliminary matter, both parties refer in their briefing to matters outside the pleadings: judicial records from prior court proceedings. Generally, when material outside the complaint is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration. *See* Fed. R. Civ. P. 12(d). There are exceptions to this rule, however, and the additional materials here fall within one or more of those exceptions. One of those exceptions is for additional materials of which the Court may take judicial notice such as, for example, judicial proceedings. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Here, all of the matters are judicial records of which the Court may take judicial notice. Another one of the exceptions is where the additional material is an exhibit to the plaintiff's complaint. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The additional materials to which Jordan refers are documents she intended to attach to her complaint, but apparently inadvertently omitted. *See* Compl. ¶ 14. It is proper to consider those documents since they were intended to be attached to the complaint.

Accepting as true the allegations in the complaint and considering the additional materials submitted in connection with the briefing, the Court finds the following facts for the purposes of this motion.

In 2015, Jordan had difficulties with Chad Little, the father of her child. Jordan lived in

either California or Missouri at the time and did not visit Illinois at any relevant time; Little lived in Illinois. In May 2015, those difficulties resulted in the filing of a criminal information (the "Information") against Jordan for child abduction in violation of Illinois law because she was alleged to have intentionally failed to return the child to Little in Illinois at the end of her visitation period. Defendant Krausz, a Village police officer, "brought forward the request to charge," Jordan, Compl. ¶ 19, although she alleges he had no probable cause to believe she had committed the Illinois offense of child abduction. A Village representative attested to the underlying facts and signed the Information, a Madison County, Illinois, judge signed the Information, and a warrant was issued for Jordan's arrest. Also in May 2015, Little petitioned the Madison County court for an order of protection (the "OP"), which was issued at that time.

Jordan first learned about the warrant in June 2016 and voluntarily surrendered to the Village police shortly thereafter. She was taken into custody and posted bond. At that time, she was served with the OP. In October 2016, the child abduction charge was dismissed.

Also in October 2016, defendant Missey, also a Village police officer, charged Jordan with violating the OP by contacting Little using various means of communication. Pursuant to the OP and the Missouri custody agreement governing visitation for Jordan and Little's child, Jordan was permitted to contact Little regarding visitation issues. In April 2017, the charge of violating the OP was dismissed.

A week later, Jordan brought this lawsuit. Count I alleges Krausz violated the Fourth Amendment when he caused the child abduction charge to be filed against her when he should have known she was not subject to the criminal jurisdiction of Illinois courts under 720 ILCS 5/1-5. Count II alleges Missey violated the Fourth Amendment when he caused her arrest for violating the OP when he should have known she had not violated it. Count III alleges the

3

Village police department failed to train its police officers to properly determine who is within Illinois' criminal jurisdiction and how to determine whether an order of protection has been violated. Count IV is a state law claim for indemnification asserting that the Village and Robert Carpenter, in his official capacity as chief of the Village police department, are financially responsible for any judgment or settlement of the claims against Krausz under the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102.

The defendants ask the Court to dismiss Count 1 on the grounds that Krausz did not request that Jordan be charged with child abduction and that Jordan was not arrested. They ask for dismissal of Counts I and II also on the grounds that Jordan has not pled sufficient facts to support a false arrest claim and that the defendants are entitled to qualified immunity. The defendants ask the Court to dismiss Count III because there is no viable underlying claim in Counts I or II and because Jordan has failed to state a claim for municipal liability. Finally, they seek dismissal of Count IV on the grounds that there is no liability on any other count and there are no allegations that Carpenter violated any of Jordan's constitutional rights. Jordan believes she has adequately pled all her claims but concedes that Carpenter should be dismissed from this case. She asks for leave to amend her complaint should the Court find it inadequate.

## III. Analysis

The Fourth Amendment to the Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Included in these Fourth Amendment guarantees is the right not to be arrested without probable cause.

A. <u>Count I</u>

To state a claim for false arrest in violation of the Fourth Amendment, a plaintiff must allege that she was arrested without probable cause. *See Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). If there is probable cause, there can be no claim for false arrest. "Probable cause exists at the time of an arrest if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (internal quotations and ellipses omitted). To be liable for a false arrest, a defendant must have been personally involved in the wrongful arrest either by making the arrest himself or by causing it to happen, say, by filing a false report or criminal complaint. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself.").

The defendants first ask the Court to dismiss Count I because Krausz was not personally involved in the matter. They claim he did not "bring forward" to the Madison County State's Attorney the request to charge Jordan with child abduction as alleged in the complaint. In support of this position, the defendants point to (but fail to explain) the Information filed against Jordan. Presumably they intend the Court to detect that the Information does not bear Krausz's signature as the Village representative swearing to the truth of the facts alleged in the Information. In her response, Jordan clarifies that Krausz provided the underlying police report upon which a Village police detective, the Village representative who signed the Information, based his prosecution request to the State's Attorney. The Court finds the defendants have waived their argument by failing to support it with any explanation of the conclusions they want

5

the Court to draw from the Information or any citation to caselaw in support of their argument. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" are waived). Even if they had not waived the argument, the Court finds that, although lacking in details to explain Krausz's specific activities, the complaint sufficient pleads that Krausz was personally involved with the issuance of the warrant and Jordan's subsequent arrest.

Second, the defendants ask the Court to dismiss Count I because Jordan voluntarily surrendered when she learned of the attest warrant and was not arrested – in the sense usually reflected by television police dramas – by the Village police. They have not cited a single case holding that a voluntary surrender, followed by custody and release on bond, does not amount to an arrest. In the absence of any support for this proposition, the Court finds the defendants have not carried their burden of proving dismissal on this ground is warranted and have waived the argument. *See Puffer*, 675 F.3d 718.

Next, the defendants ask the Court to dismiss Count I because a request to bring a charge is not sufficient to support a cause of action for false arrest. *Acevedo* belies this assertion. In that case, the Court of Appeals for the Seventh Circuit stated that an officer who files a false report can be liable for false arrest if the report was causally connected to the arrest. *Acevedo*, 457 F.3d at 723. In this case, Jordan has alleged a causal connection between Krausz's actions and her arrest. While she has not alleged Krausz made any false statements of fact in his underlying police report like the officer in *Acevedo* did, she has suggested that he made the report without any probable cause to believe she was subject to the jurisdiction of the state of Illinois such that she could have violated an Illinois criminal statute and could be prosecuted in an Illinois court. The defendants have not persuaded the Court that a police officer who causes

6

an arrest warrant to be issued without any basis for believing the subject violated an Illinois criminal law punishable in an Illinois court could not be liable for false arrest.

In sum, the defendants have not convinced the Court that Jordan's pleading of Count 1 is factually insufficient or inadequate as a matter of law.

B. Count II

The defendants argue in a cursory fashion that Missey cannot be liable simply for filling out a misdemeanor complaint form alleging Jordan violated the OP. This argument is waived because it is underdeveloped and unsupported. Even if it were not, filling out a misdemeanor complaint form can support a claim for false arrest if, for example, the complaint form contains false statements or in some other way causes an arrest that lacked probable cause. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006). The circumstances surrounding Missey's filling out the form – such as whether it was based on a statement from Little, whether that statement established probable cause, and whether it was reasonable to believe Little was telling the truth – are not pled in the complaint but can be fleshed out in discovery and addressed at the summary judgment stage.

C. Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). While it is often beneficial to first inquire into whether the plaintiff has alleged a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, 555 U.S. at 236.

The defendants argue Krausz and Missey are entitled to qualified immunity because it was not clear at the time that relying on a complaining witness's statements to obtain an arrest could amount to a false arrest. They point to *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). In that case, the Court of Appeals for the Seventh Circuit held that an officer was not liable for false arrest for signing a criminal complaint *after* the arrest occurred. *Id.* at 583-84. Additionally, the Court of Appeals held that, even if the police officer had participated in the arrest by doing something prior to its occurring, he would have been entitled to qualified immunity because the officer had probable cause based on "information obtained from an eyewitness who it seems reasonable to believe is telling the truth." *Id.* at 585-86. The Court of Appeals noted, "So long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Id.* at 585.

It is true that Krausz and Missey might have been entitled to qualified immunity at the motion to dismiss stage if Jordan's complaint had alleged facts showing their participation in Jordan's charges and arrests was based on "information obtained from an eyewitness who it

8

seem[ed] reasonable to believe is telling the truth." *Id.* at 585-86. However, Jordan's complaint does not allege any facts reasonably leading to that conclusion, and she is not required to plead around defenses like qualified immunity. Because *the conduct actually alleged in the complaint* demonstrates Krausz and Missey did not have probable cause to arrest Jordan, and the law at the time clearly established that such conduct violated the constitution, Krausz and Missey are not entitled to qualified immunity at this time.

D. Count III

The defendants ask the Court to dismiss Count III on the grounds that there is no underlying constitutional violation alleged in Counts I and II. However, since the Court has not dismissed Counts I and II, the Court cannot dismiss Count III on the grounds that there is no underlying violation.

There is another basis, however, for dismissing Count III. The defendants ask the Court to dismiss Count III on the grounds that Jordan has not alleged a municipal constitutional violation under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, a municipality can be liable under § 1983 if (1) it had an express policy calling for constitutional violations (2) it had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) if a person with final policymaking authority for the county caused the constitutional violation. *Monell*, 436 U.S. at 694; *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). A municipality is liable only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," is the moving force behind the constitutional violation. *Monell*, 436 U.S. at 694.

The Court agrees with the defendants that Jordan's current allegations are inadequate to

plead a cause of action under *Monell*. The complaint alleges essentially that, because Krausz and Missey committed constitutional torts, the Village police department's training was inadequate. The naked conclusion that there was a policy of inadequate training simply because two individual officers failed to know the law – in two vastly different circumstances, and without any indication that officer ignorance is common to the rest of the police force – does not plausibly suggest the failure to train was a policy or custom such that it amounted to official policy. Instead, the complaint makes only boilerplate allegations that are insufficient to satisfy even liberal federal notice pleading standards. *See McTigue v. City of Chi.*, 60 F.3d 381, 382-83 (7th Cir. 1995).

Additionally, in Count III, Jordan alleges that the *Village police department* had a policy. However, the Village police department is not a defendant, and could not be because police departments are not suable entities apart from the municipalities they serve. *See West By & Through Norris v. Waymire,* 114 F.3d 646, 646-47 (7th Cir. 1997). Only the Village is a defendant, and Jordan has not alleged the *Village itself* had a policy of inadequately training police officers. *See Latuszkin v. City of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001)

For these reasons, the Court will dismiss Count III without prejudice but with leave to replead.

    E.    <u>Count IV</u>

The defendants ask the Court to dismiss Count IV on the grounds that there is no viable underlying claim in Counts I, II or III for which the Village could be required to provide indemnity. Counts II and III are actually irrelevant to Count IV since Count IV only seeks indemnification for claims against Krausz, who is only sued in Count I. However, since the Court has not dismissed Count I, it cannot dismiss Count IV for lack of any violation for which

indemnity would be required.

    F.    Carpenter

The parties agree that Carpenter, sued in his official capacity as the Village chief of police, should be dismissed. The Court will therefore dismiss him from this case.

**IV.**    **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Doc. 11);

- **DISMISSES without prejudice** Count III with leave to replead it in an amended complaint;

- **DISMISSES without prejudice** Count IV against Carpenter, in his official capacity. Carpenter is terminated as a party to this case;

- **ORDERS** that Jordan shall have up to and including December 1, 2017, to file an amended complaint repleading Count III. She may also replead Counts I and II to clarify the defendants' conduct as she has set forth in her response to the motion to dismiss;

- **WARNS** Jordan that if she fails to amend her pleading in a timely manner, the Court may construe her failure to amend as an admission that she cannot plead a viable *Monell* claim and will convert the dismissal of Count III to with prejudice;

- **DIRECTS** Jordan to consult Local Rule 15.1 regarding underlining of new material in amended pleadings; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  November 20, 2017**

                                s/ J. Phil Gilbert
                                **J. PHIL GILBERT**
                                **DISTRICT JUDGE**