UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ARIANA R. JORDAN,

    Plaintiff,

v.

JUSTIN D. KRAUSZ, JARED MISSEY,
ROBERT CARPENTER and THE VILLAGE
OF MARYVILLE,

    Defendants.

Case No. 17-cv-434-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Justin D. Krausz's motion for summary judgment (Doc. 30). Plaintiff Ariana R. Jordan has responded to the motion (Docs. 34 & 36), and Krausz has replied to that response (Doc. 37).

**I.    Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present

evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II.     Facts

Viewing all the evidence and drawing all reasonable inferences in Jordan's favor, the evidence establishes the following relevant facts for the purposes of this motion. The Court focuses primarily on Krausz's conduct because a defendant in a § 1983 suit can only be liable for constitutional deprivations with which he was personally involved, *Consolino v. Towne*, 872 F.3d 825, 832 (7th Cir. 2017), but touches on additional facts to give Krausz's conduct and Jordan's allegations context.

Jordan and Chad Little had a son but in 2015 they did not live together. Visitation rights for the minor son were governed by an order from a Missouri court. Prior to May 11, 2015, Jordan lived in Missouri, Little lived in Illinois, and the two exchanged custody of their son at a specific location in St. Louis, Missouri. On May 11, 2015, Jordan informed Little she had moved with their son to San Diego, California, and would not be returning to the area. Little approached the Missouri court that had issued the custody order and obtained a new order declaring him the sole custodian of their son ("May 14 Missouri custody order"). He filed the May 14 Missouri order in the Circuit Court of Madison County, Illinois, and obtained an order of protection from that court acknowledging that Little was the sole custodian of their son ("May 19 Illinois order of protection").

On May 19, 2015, Little reported to the Maryville Police Department that Jordan had wrongfully absconded with their child. He made an oral report to Krausz, a patrolman on duty at the police station at the time, and gave him copies of the May 14 Missouri custody order and the May 19 Illinois order of protection. At no point did Little state that Jordan had ever been in Illinois. Krausz was not sure if Jordan could be charged with a crime but believed criminal charges could be justified because Little "had sole custody of the child and the child was not in Illinois in his custody." Krausz dep. 7:14-18. Krausz spoke with Maryville Detective Howe who told Krausz to prepare a report and that he would investigate further. Krausz completed an "informational report" summarizing the information Little had reported to him and gave the report to his superiors along with the May 14 Missouri custody order and the May 19 Illinois order of protection. Jordan does not dispute that Krausz's informational report is truthful, that is, that Little actually reported to Krausz the facts reflected in Krausz's report.

Krausz took no further action with respect to Little's complaint. Krausz did not request

3

that anyone further investigate the events in his informational report or that any criminal charges be filed against Jordan, and he never raised any question about whether there was jurisdiction to charge Jordan with an Illinois crime. In fact, Krausz did not know what was done with his report after he filed it and had no further connection with the matter. However, it would not have been surprising for Krausz's report to result in charges against Jordan. For felony charges, a patrolman usually began by filing an informational report, a supervisor would decide whether to assign a detective to investigate further, the assigned detective would review the informational report and decided whether to ask the State's Attorney to prosecute, and the State's Attorney would decide whether to pursue charges. Indeed, all of Krausz's prior informational reports had followed that course and resulted in charges.

In fact, a Maryville police sergeant assigned Detective Howe to investigate the matter further. Detecting a potential jurisdictional problem and uncertain whether Jordan had committed a crime subject to Illinois' criminal jurisdiction,[1] Howe submitted Krausz's report, the

---

[1] At the time of Little's report to Krausz, the Illinois criminal jurisdiction statute stated:

(a) A person is subject to prosecution in this State for an offense which he commits, while either within or outside the State, by his own conduct or that of another for which he is legally accountable, if:

(1) the offense is committed either wholly or partly within the State; or

(2) the conduct outside the State constitutes an attempt to commit an offense within the State; or

(3) the conduct outside the State constitutes a conspiracy to commit an offense within the State, and an act in furtherance of the conspiracy occurs in the State; or

(4) the conduct within the State constitutes an attempt, solicitation or conspiracy to commit in another jurisdiction an offense under the laws of both this State and such other jurisdiction.

(b) An offense is committed partly within this State, if either the conduct which is an element of the offense, or the result which is such an element, occurs within the State. In a prosecution pursuant to paragraph (3) of subsection (a) of Section 9-1, the attempt or commission of a forcible felony other than second degree murder within this State is conduct which is an element of the offense for which a person is subject to prosecution in this State. In homicide, the "result" is either the physical contact which causes death, or the death itself; and if the body of a homicide victim is found within the State, the death is presumed to have occurred within the State.

May 14 Missouri custody order and the May 19 Illinois order of protection to the Madison County State's Attorney's Office for attorney review, but he did not formally request prosecution. The State's Attorney's Office decided to pursue a charge against Jordan for child abduction in violation of Illinois law.[2] A Madison County judge issued a warrant for Jordan's arrest, and she was arrested. She sought dismissal of the charge on the grounds that an Illinois court did not have jurisdiction over her because she had not committed any act in Illinois. After full briefing by both sides, the court agreed with her and dismissed the charge.

The only remaining claim in this case is Count I against Krausz for false arrest in violation of the Fourth Amendment. The claim is based on the assertion that Krausz should have known Jordan was not subject to Illinois' criminal jurisdiction since no information suggested she had ever been in Illinois. Krausz asks the Court for summary judgment on this count on the grounds that (1) Krausz's conduct is not actionable, (2) Krausz is entitled to qualified immunity and (3) probable cause existed for Jordan's arrest. Jordan disagrees, arguing that Krausz was responsible for Jordan's arrest because his report was a necessary step in the foreseeable process leading to the arrest. She also argues that Krausz is not entitled to qualified immunity because a reasonable officer would have known, based on a reading of the Illinois criminal jurisdiction statute, that Illinois had no criminal jurisdiction over Jordan and would not have started the

---

  (c) An offense which is based on an omission to perform a duty imposed by the law of this State is committed within the State, regardless of the location of the offender at the time of the omission.

720 ILCS 5/1-5 (2015).

[2] At the time the State's Attorney decided to charge Jordan, the Illinois Child Abduction Act stated, in pertinent part:

  (b) A person commits the offense of child abduction when he or she does any one of the following:

  * * *

  (5) At the expiration of visitation rights outside the State, intentionally fails or refuses to return or impedes the return of the child to the lawful custodian in Illinois. . . .

720 ILCS 5/10-5 (2015).

5

process that led to Jordan's arrest. Finally, she denies that probable cause existed to arrest her.

**III.     Analysis**

The Court need not address all of the arguments Krausz raises in his summary judgment motion because it can resolve this case on the basis of qualified immunity. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It applies only to government officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *see Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). While it is often beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, 555 U.S. at 236.

If the plaintiff has established a constitutional violation, the Court must determine whether the right was sufficiently clear at the time of the violation that a reasonable official would have understood that what he was doing violated that right. *Anderson v. Creighton*, 483

6

U.S. 635, 640 (1987); *see Brosseau*, 543 U.S. at 199; *Wilson*, 526 U.S. at 609. The inquiry must be made focusing on the specific context of the case, not at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "[T]he clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* at 552 (quoting *Anderson*, 483 U.S. at 639, 640; internal citations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011).

The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950. To determine whether the right was clearly established, this Court looks to Supreme Court and Seventh Circuit Court of Appeals decisions, then, if there is no controlling precedent, to all relevant caselaw to determine if there is a clear trend suggesting recognition of the right is inevitable. *Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017). "Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir. 2001).

Jordan has attempted to demonstrate Krausz violated her Fourth Amendment rights by taking steps toward her arrest when he should have known there was no jurisdiction to arrest her for violating any Illinois law. The Fourth Amendment to the Constitution provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

7

searched and the persons or things to be seized." U.S. Const. amend. IV. Included in these Fourth Amendment guarantees is the right against false arrest.

To prove a claim for false arrest in violation of the Fourth Amendment, a plaintiff must show that she was arrested without probable cause. *See Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). If there is probable cause, there can be no claim for false arrest. "Probable cause exists at the time of an arrest if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing that the suspect has committed, is committing, or is about to commit an offense." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (internal quotations and ellipses omitted). To be liable for a false arrest, a defendant must have been personally involved in the wrongful arrest either by making the wrongful arrest himself or by causing it to happen, say, by filing a false report or criminal complaint. *See Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006) ("A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself.").

Questions of probable cause notwithstanding, the Court has serious doubts about whether a reasonable jury could find Krausz was sufficiently involved in Jordan's arrest to be liable for false arrest. His involvement was limited to accurately summarizing a citizen complaint and passing it on to his superiors because he thought it might violate Illinois law. He did not request that Jordan be arrested or prosecuted, and he did not do anything else that might be construed as sending Little's complaint on an inevitable trajectory toward Jordan's arrest. True, Krausz's action was a necessary step toward Jordan's arrest, but there were multiple other steps in the process where the discretion and judgment of others—including a lawyer and a judge—regarding the facts and the law could have derailed the arrest: Krausz's supervisor would have to decide

8

whether to begin an investigation, the detective assigned to the matter would have to decide whether the facts warranted presenting the matter to the State's Attorney, the State's Attorney would have to decide whether the evidence was sufficient to begin a prosecution, and a judge would have to decide whether there was probable cause to issue an arrest warrant. Unlike the situation in *Acevedo*, where a false criminal complaint led directly to a wrongful arrest, the connection between Krausz's report and Jordan's arrest is so attenuated that a reasonable jury could not find that Krausz's report caused the arrest. All Krausz did was receive a complaint from Little and pass it on to his supervisors; he is not responsible for anything that happened after that.

However, even assuming Jordan could prove a Fourth Amendment violation, she has pointed to no law clearly establishing that Krausz's conduct violated her rights. She points only to *Kaufman v. Higgs*, 697 F.3d 1297 (10th Cir. 2012), but that case is not analogous to this case at all. There, a police officer construed the defendant's refusal to identify who was driving his vehicle at a particular time as using an "obstacle" to interfere with law enforcement and then arrested the defendant for obstruction of a peace officer. *Id.* at 1299. The Court of Appeals for the Tenth Circuit found that no reasonable officer would have construed silence as using an "obstacle" under Colorado law. *Id.* at 1301. In contrast, Krausz's case involves taking a report from a citizen about events that ended up not amounting to crime under Illinois' jurisdiction and passing it along to his supervisors for their consideration.

As for the criminal jurisdictional issue itself, that it was not clearly established is evidenced by the position of the State's Attorney and the judge issuing the warrant that probable cause existed to believe Jordan had committed an Illinois crime. Where it was not clear to a State's Attorney and a judge that no probable cause existed, it can hardly be clear to a police

9

officer.

In the end, Jordan has not pointed to any caselaw or a clear trend of cases "'particularized' to the facts of the case," *White v. Pauly*, 137 S. Ct. 548, 552 (2017), establishing Krausz's conduct violated the Fourth Amendment or to "existing precedent . . . plac[ing] the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Consequently, she has not carried her burden of showing that the law was clearly established at the time of Krausz's conduct such that a reasonable official would have understood what he was doing violated Jordan's rights.

For these reasons, Krausz is entitled to qualified immunity on Count I. As a consequence, there is no longer a possibility of a judgment against Krausz or that the Village of Maryville would be liable to provide indemnity for any such judgment. Count IV for indemnity is therefore dismissed with prejudice. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) (courts may dismiss frivolous or defective claims spontaneously).

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Krausz's motion for summary judgment on Count I (Doc. 30);
- **DISMISSES** Count IV as moot; and
- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  June 8, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
